IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERA A. McMILLAN, | ) |
| | ) |
| | ) Case No: 2:07:CV-01-WKW |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ALABAMA DEPARTMENT OF | ) |
| YOUTH SERVICES and | ) |
| MICHAEL J. HARDY, | ) |
| | ) |
| Defendants. | ) |

### AFFIDAVIT OF T. DUDLEY PERRY, JR.

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, personally appeared Dudley Perry, Jr., who being known to me and being first duly sworn, deposes and says as follows:

"My name is Dudley Perry, Jr. I am a resident citizen of the State of Alabama, over the age of nineteen years and have personal knowledge of the facts stated in this affidavit. I am an attorney licensed to practice law in the State of Alabama. I am general counsel for the Alabama Department of Youth Services. This affidavit is given in response to the Plaintiff's Motion for Sanctions and Costs (Doc. 50) and the affidavit of Gerald Love attached thereto.

Plaintiff's counsel in this case has engaged in a pattern of denying that documents actually produced were produced. In the earlier stages of discovery I allowed Plaintiff's counsel to work directly with DYS Legal Division staff to obtain discovery. I instructed my staff to produce whatever documents the Plaintiff requested. But after I received a letter dated December 14, 2007 from counsel for the Plaintiff claiming that certain discovery responses were

"incomplete", it became unquestionably clear the Plaintiff's counsel's staff were not dealing with my staff in good faith to obtain discovery. On several previous occasions counsel for Plaintiff had alleged that documents actually produced had not been produced. In the December 14 letter, some of the allegedly "incomplete" responses had never been requested, some of the documents alleged to be "incomplete" responses had been produced once, and some of them had actually already been produced **twice**. I could no longer believe that the pattern was inadvertent.

On December 20, 2007, Gerald Love came to my office to obtain documents counsel for the Plaintiff claimed in the December 14 letter had not been produced. The December 14, 2007 letter identified certain documents that he claimed had not been produced because the responses were "incomplete." (Doc. 50, Exhibit C). As stated above, some of the documents identified in the December 14 letter as having not been produced had **never been requested**.

Nevertheless, on December 20 as more specifically discussed below, I meticulously went through the document requests in the inaccurate December 14 letter, item by item, with Mr. Love to show him the documents responsive to those requests. As stated above and more specifically discussed below, most of the documents had actually been produced and some of them had been produced twice because each time I had previously produced them counsel for Plaintiff followed up my client's production responses with a letter claiming the documents just received had not been produced.

On December 20, 2007, I **again** had my staff xerox the documents the Plaintiff claimed in the December 14 letter she had not obtained. During the course of my discussion with Mr. Love, I identified specific documents previously produced and bates stamp numbered and identified which document requests outlined in the December 14 letter they were responsive to. Each item identified in the December 14 letter was addressed item by item and each was fully responded to.

The following is a summary of my conversation with Mr. Love on December 20, 2007:

Mr. Love and I first addressed exhibits 1-7 introduced at the dismissal hearing before Administrative Law Judge Weller. (See Doc. 50, Exhibit C, fourth paragraph). I told Mr. Love which documents DYS had already produced were exhibits 1-7. I also handed Mr. Love duplicate copies of exhibits 1-5, and I discussed with him the fact that the copies I was providing were <u>duplicates</u> because they had already been included in other responses. I produced them because his boss Mr. Jacobs had claimed in the December 14 letter that the documents had not been produced. The Motion for Sanctions and Costs now seeks sanctions and costs against DYS because duplicate documents were produced.

Next, counsel for Plaintiff claimed that he did not have all correspondence "related to the Michael Hardy between the dates of January 7, 2006 and July 25, 2006." (Sic.) (See Doc. 50, Exhibit C, second paragraph). I told Mr. Love that I had already produced all such correspondence in my possession and to resolve any doubt I produced to Mr. Love on December 20 my <u>entire correspondence file</u>, again at my client's expense.

Next, counsel for Plaintiff claimed that "pre-trial briefs and/or other communications regarding the Dismissal Hearings" had not been produced. (See Doc. 50, Exhibit C, third paragraph). I produced to Mr. Love my entire pleadings file on the Hardy hearing, again at my client's expense. As discussed below, after I went over all the allegedly incomplete items in the December 14 letter, I allowed Mr. Love to take as much time as he wanted with the file and I xeroxed every document he asked for from the file–even though those documents had never been the subject of any discovery request.

Next, I discussed the transcript of the administrative hearing. (See Doc. 50, Exhibit C,

fifth paragraph). I provided the transcript of the administrative hearing to Mr. Love and allowed him to take as much time as he wanted to review it. Mr. Love admitted that he had obtained from Mr. Hardy's counsel all documents in Mr. Hardy's counsel's possession, he claimed the transcript was not included. It was my understanding that Mr. Hardy's counsel had the transcript but I gave Mr. Love the court reporter's name (Laura Head) and told him that I would not xerox the 500+ page transcript for him but that he could take as much time as he wanted to view it. Mr. Love wanted to take my copy, which I would not allow. Based on the course of dealings thus far I do think it was reasonable to either copy the document for him or allow him to take my copy.

Next, counsel for Plaintiff claimed the "post-trial briefs to Administrative Law Judge Weller filed on or about July 15, 2006" had not been produced. (See Doc. 50, Exhibit C, sixth paragraph). I again pointed out to Mr. Love that I had my staff xerox the entire correspondence file which included the letter brief to Judge Weller in that case and I showed him the document.

Next, counsel for Plaintiff claimed that "all records and reports related to the hostile environment charge referenced in exhibit 9 of the November 2005 hearing" had not been produced. (See Doc. 50, Exhibit C, seventh paragraph). Love explained that this document was an exhibit identified by Mr. Hardy but not produced by him. It is not in my possession. I discussed with Mr. Love that this document has absolutely nothing to do with this case and that I do not have any such document in my possession.

Next counsel for Plaintiff claimed that documents relating to the investigation of the Plaintiff's complaints had not been produced. (See Doc. 50, Exhibit C, eighth paragraph). I told Mr. Love that I had given him the entire DYS files on these investigations and Mr. Love acknowledged that he had them, but inexplicably claimed that there was correspondence between the Administrative Law Judge and DYS not included in the files. (Obviously if any such

correspondence existed it would **not** have been in those files but just as obviously would have been included in other documents already.) I once again pointed out to Mr. Love that I had produced the **entire** correspondence file in this entire case—which did include any such correspondence—and that there are no other documents in my possession.[1]

Next, counsel for Plaintiff claimed that he had not been provided the last known address and phone number for employee "L___ M___ (´nee L___ A_____)." (See Doc. 50, Exhibit C, ninth paragraph). Plaintiff had previously asked for information on "L___ A_____" but had not filed a proper discovery request seeking any information on an employee by the name of "L___ M___." Counsel for Plaintiff had already been told there was no information in the DYS personnel system under L___ A_____ and the discovery request seeking information on L___ A_____ had been answered truthfully and correctly. Mr. Love conceded that he hadn't known the correct name was "M___" until recently. The December 14 letter falsely claimed that the discovery responses were "incomplete" because the information had not been provided for L___ M___—which, again, had never been asked for in a proper discovery request. Nevertheless, I agreed to ask the DYS personnel office to look for "L___ M___", which they did, and I provided that information to counsel for the Plaintiff on December 26. Incredibly, the instant Motion for Sanctions and Costs, filed on January 22, 2008 after that information was received, references

---

[1] Mr. Love makes much ado in his affidavit of the fact that I was frustrated or angry with him during our meeting on December 20. I do concede that with ample justification I was indeed frustrated and angry. For example, in addition to that discussed above, after I showed Mr. Love several of the documents falsely claimed in the December 14 letter to not have previously been produced, Mr. Love continued to have an argumentative attitude. I told Mr. Love that I did not like the fact that he was obviously playing games with discovery and claiming that he hadn't been given documents that he had in fact been given. It is my opinion that counsel for the Plaintiff, with Mr. Love's assistance, has abused discovery in this case and has fabricated a discovery dispute in bad faith.

this request which was made for the first time on December 14 and answered on December 26.

Finally, the Plaintiff sought all complaints of sexual harassment filed by employees in the Middle District of Alabama. That information was the subject of a previous objection to which this Court ruled and limited the scope. Those files were produced.

At the conclusion of the meeting on December 20, I asked Mr. Love whether there were any documents not identified in the December 14 letter that my client had failed to produce. Mr. Love could not identify any other documents not produced. I offered to stay as long as necessary to be sure the Plaintiff had each and every document she sought in this case and I asked him to confer with counsel for the Plaintiff to be sure he had everything the Plaintiff wanted. Mr. Love refused my offer and left the office, making it clear that Mr. Jacobs would determine that later.

I stated very clearly to Mr. Love that he obviously continues to claim he has not received documents that he had in fact received. I pressed further and asked Mr. Love whether there were any other documents that he intended to later claim he did not have. I clearly explained to Mr. Love that I wanted to know whether there were any documents that they currently claim the Defendant has failed to produce—other than the ones identified in the December 14 letter—all of which had been produced. Mr. Love's response was cagey: he stated that he was not going to "close the door on that," but that he "didn't know of any." It is telling that the instant Motion for Sanctions fails to identify any documents that were not produced. It is my genuine and sincere belief that this motion is in bad faith.

While Mr. Love and I waited for my staff to finish copying documents, I retrieved and produced the entire pleading file in this case and allowed Mr. Love to view and copy anything and everything in it. I also offered to make copies of all other documents in my possession in any file related to this case, even though they had not been the subject of any discovery requests.

Respectfully Submitted

T. Dudley Perry, Jr.
General Counsel
Alabama Department of Youth Services

SWORN TO AND SUBSCRIBED BEFORE ME, this 7th day of February, 2008.

NOTARY PUBLIC

MY COMMISSION EXPIRES: 8/10/08