**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **TERA A. McMILLAN,** | ) | |
| | ) | |
| | ) | **Case No: 2:07:CV-01-WKW** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **YOUTH SERVICES and** | ) | |
| **MICHAEL J. HARDY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT ALABAMA DEPARTMENT OF YOUTH SERVICES' RESPONSE TO MOTION TO QUASH SUBPOENA

COMES NOW the Defendant Alabama Department of Youth Services ("DYS"), and responds to Dr. John R. Langlow's Motion to Quash Subpoena. (Doc. 52). DYS requests that the Court enter an order enforcing the subpoena. In support whereof DYS submits the following:

1.    **Federal Common Law Applies.** In applying this rule, the question whether state law or federal common law applies must be determined. "In civil actions and proceedings," where evidence is offered "with respect to an element of a claim or defense as to which State law supplies the rule of decision," the existence and nature of the privilege "shall be determined in accordance with state law." (See F.R.Evid. 501). The plaintiff has filed a complaint citing Title VII and 42 U.S.C. 1983; thus the federal law applies.

2.    **If the Privilege Exists the Plaintiff Waived It.**   Although the psychotherapist - patient privilege exists, it is not absolute. When a party puts there

physical condition in issue, the question obviously arises whether the privilege has been waived.

*See Doe v. Dairy*, 456 F.3d 704, 718 (7th Cir.2006); *Schoffstall v. Henderson*, 223 F.3d 818,

(8th Cir.2000). In this case there can be no doubt the Plaintiff waived the privilege.  The Plaintiff

testified in her deposition as follows:

P. 121
16 . . . And you are saying in this lawsuit that it makes you so
17 miserable, that you suffered so greatly --
18 A Yes, I have.
19 Q -- that you are entitled to significant money
20 damages because of that?
21 A I have suffered greatly, sir.
22 Q And you are claiming that you want to be
23 compensated in money for that suffering? I understand

P. 122
1 that correctly; right?
2 A Yes, sir. I have suffered greatly mentally
3 and physically.

(Exhibit A, McMillan Dep. P. 121-122).

P. 194
19 Q That's it? You are going to go tell the jury
20 that all you want out of the lawsuit is for your
21 co-workers to be told that you told the truth and that
22 will solve everything?
23A I think I need some more of that psychological

The plaintiff further testified as follows:

P. 195
1 counseling because I can't afford it.
2 Q You need psychological counseling for what?
3 A For the mental abuse that I have experienced
4 while working here.
5 Q How much is that?
6 A I don't know.
7 Q Have you had to pay for any psychological
8 counseling out of your pocket?

9 A I had to pay the co-pay, I think.
10 Q How much?
11 A I don't know. I don't remember.
12 Q A ballpark figure?
13 A I know the department recently set up for us
14 to have three sessions with a psychologist.
15 Q So I think you know what I am trying to ask
16 you.
17 What do you want out of this case? You are asking
18 for damages. What do you want?
19 A Compensation
20 Q Well, how much? What do you want? What do
21 you intend to ask for? What do you think it is worth?
22 A It is worth a whole lot more than what you are
23 willing to give me.

(Exhibit A, McMillan Dep. P. 194-195)

WHEREFORE, the Defendant respectfully request that this Honorable Court deny the Dr.

Langlow's Motion to Quash Subpoena in this case and enter an order enforcing the subpoena for

the plaintiff's medical records.

Respectfully submitted this 11ᵗʰ day of February 2008,

**s/ T. Dudley Perry Jr.**
T. Dudley Perry, Jr.
Bar Number: 3985-R67T
General Counsel
Attorney for the Defendant
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, AL 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872
E-Mail: dudley.perry@dys.alabama.gov

**s/Sancha E. Teele**
Sancha E. Teele
Assistant Attorney General
Bar Number: 0103-H71T
Attorney for the Defendant

Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, AL 36057
Telephone: 334-215-3803
Fax: (334) 215-3872
E-Mail: sancha.teele@dys.alabama.gov

### CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2008, I electronically filed the foregoing, DEFENDANT ALABAMA DEPARTMENT OF YOUTH SERVICES' RESPONSE TO MOTION TO QUASH SUBPOENA with the Clerk of the Court using the CM/ECF system which will send notification of such filing to
the following:

Jimmy Jacobs
E-mail:jacobslawoffice@charter.net
Attorney At Law
143 Eastern Boulevard
Montgomery, AL 36117
Tel: (334) 215-1788
Fax: (334) 215-1198

James Eldon Wilson
Attorney at Law
4625 Lomac Street
Montgomery, AL 36106

Stephen B. Griffin
Attorney for Dr. John Langlow
2100 River Haven Drive Suite 1
Hoover, AL 32544
Tel: (205) 402-7476
Fax: (205) 402-7292

**s/ T. Dudley Perry Jr.**
T. Dudley Perry, Jr.
Bar Number: 3985-R67T
Deputy Attorney General
Attorney for the Defendants

4

# MCMILLAN V. DYS AND HARDY

# EXHIBIT A

1

1       IN THE UNITED STATES DISTRICT COURT FOR

2         THE MIDDLE DISTRICT OF ALABAMA

3            NORTHERN DIVISION

4

5  TERA A. MCMILLIAN       )

6    Plaintiff,      )

7               )

8  VS.          ) CASE NO.:  2:07-CV-01-WKW

9               )

10  STATE OF ALABAMA DEPARTMENT )

11  OF YOUTH SERVICES, and   )

12  MICHAEL HARDY,      )

13    Defendants.     )

14    The deposition of TERA MCMILLIAN, taken by the

15  Defendants, pursuant to the Federal Rules of Civil

16  Procedure, before Kimberly B. Faucette, ACCR-309,

17  Certified Court Reporter and Notary Public in and for the

18  State of Alabama at Large, at the Alabama Department of

19  Youth Services, Mt. Meigs, Alabama, on the 15th day of

20  January, 2008, at 10:30 a.m., pursuant to notice, and

21  continued on the 22nd day of January, 2008, at 9:00 a.m.,

22  pursuant to notice.

23        *   *   *   *   *

**EXHIBIT**
Defendant
A

1   APPEARANCES:

2

3   FOR THE PLAINTIFF:        FOR DEFENDANT MICHAEL HARDY:

4   MR. JIMMY JACOBS        MR. JAMES E. WILSON

5   Attorney at Law         Attorney at Law

6   Montgomery, Alabama       Montgomery, Alabama

7

8   FOR DEFENDANT ALABAMA DYS:

9   MR. T. DUDLEY PERRY, JR.

10  MS. SACHA TEELE

11  Attorneys at Law

12  Mt. Meigs, Alabama

13

14  ALSO PRESENT:

15  MR. GERRY LOVE

16                INDEX

17      EXAMINATION BY MR. PERRY............1

18          DYS EXHIBIT NO. 1............106

19      EXAMINATION BY MR. WILSON.........198

20          HARDY EXHIBIT NO. 1..........198

21          HARDY EXHIBIT NO. 2..........301

22          HARDY EXHIBIT NO. 3..........303

23

TERA MCMILLIAN - 1/22/2008

1    Q    I am actually not sure.  You don't remember?

2    A    No, sir.

3    Q    What do you want in this case?

4    A    Vindication.

5    Q    What does that mean?  I need specifics.

6    A    I want it to be known that I was telling the

7    truth; I was not lying.

8    Q    You don't think that Michael Hardy having been

9    fired based on what you said and personnel upholding

10   that?

11   A    No, sir.  Because the people back there seem

12   to think he and I were having a relationship.

13   Q    So you want us to go tell everybody that you

14   and Michael Hardy didn't have a relationship?

15   A    If you would like to do that, that would be

16   good.

17   Q    Anything else you want out of this lawsuit?

18   A    Like what do you mean?

19   Q    That's it?  You are going to go tell the jury

20   that all you want out of the lawsuit is for your

21   co-workers to be told that you told the truth and that

22   will solve everything?

23   A    I think I need some more of that psychological

TERA MCMILLIAN - 1/22/2008

195

1    counseling because I can't afford it.

2        Q    You need psychological counseling for what?

3        A    For the mental abuse that I have experienced

4    while working here.

5        Q    How much is that?

6        A    I don't know.

7        Q    Have you had to pay for any psychological

8    counseling out of your pocket?

9        A    I had to pay the co-pay, I think.

10       Q    How much?

11       A    I don't know.  I don't remember.

12       Q    A ballpark figure?

13       A    I know the department recently set up for us

14   to have three sessions with a psychologist.

15       Q    So I think you know what I am trying to ask

16   you.

17       What do you want out of this case?  You are asking

18   for damages.  What do you want?

19       A    Compensation.

20       Q    Well, how much?  What do you want?  What do

21   you intend to ask for?  What do you think it is worth?

22       A    It is worth a whole lot more than what you are

23   willing to give me.

TERA MCMILLIAN - 1/22/2008

121

1  Q   You think so?

2  A   He had a lot of friends.

3  Q   Do you?

4  A   Do I have a lot of friends out here?

5  I wouldn't say friends, but I am friendly with

6  people.

7  Q   I am going to jump over to another subject.

8  There is something that I am puzzled about. If I

9  understand what you just said, you are friendly to

10  people?

11  A   I am friendly with people, yes.

12  Q   But what you are saying in this lawsuit is

13  that people aren't friendly to you; right?

14  A   Some of them.

15  Q   Right. The people that we have talked about.

16  And you are saying in this lawsuit that it makes you so

17  miserable, that you suffered so greatly --

18  A   Yes, I have.

19  Q   -- that you are entitled to significant money

20  damages because of that?

21  A   I have suffered greatly, sir.

22  Q   And you are claiming that you want to be

23  compensated in money for that suffering? I understand

122

1   that correctly; right?

2      A  Yes, sir. I have suffered greatly mentally

3   and physically.

4      Q  But at the same time, every one of those

5   people, they work here on this campus. You do know that

6   you have had the opportunity, if you wanted, just say

7   the word, and you could transfer, if you want to?

8      A  Transfer, what do you mean?

9      Q  You could leave this campus if you want to and

10   go work at Autauga, for example? You know that?

11      A  Why would I want to go work at Autauga?

12      Q  I didn't ask you that. On one hand, it is

13   your testimony that the people here mistreat you so

14   badly that you have had to have all kinds of treatment

15   and therapy and everything else, and now you want a lot

16   of money, and you also know, on the other hand, that you

17   have the opportunity, if you want, to go work somewhere

18   else? That is your choice?

19      A  I have not done anything to anyone.

20      Q  No. No. You understand that, don't you?

21      A  I do understand that.

22      Q  Right. I really am curious about that. And I

23   have got to tell you, unless I was trying to just figure