IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERA A. McMILLAN      ) | |
|     **Plaintiff**          ) | |
|                        ) | |
| v.                     ) | Civil Action No: 2:07-cv-001-WKW |
|                        ) | |
| ALABAMA DEPARTMENT OF  ) | (JURY DEMAND) |
|   YOUTH SERVICES, et al., ) | |
|     **Defendants**         ) | |

**SUR-REPLY TO DEFENDANT DEPARTMENT OF YOUTH SERVICES'
SUPPLEMENTAL REPLY BRIEF**

COMES NOW the Plaintiff and submits, pursuant to the Court's Order dated March 13, 2008, her response to this Defendant's supplemental reply brief. The defendant's supplemental brief is limited solely to the issue of the plaintiff's retaliation claim against the Alabama Department of Youth Services (DYS), and relies solely on the deposition[1] of the plaintiff and evidence previously submitted by the plaintiff. (Doc. 85-2: p. 1, ¶ 1) This defendant has previously addressed this issue (Doc. 61) and offers new argument in this supplemental reply brief.

In order to establish a prima facie case for retaliation against DYS under Title VII, McMillan must show that (1) she engaged in protected activity; (2) she was subjected to adverse actions which would dissuade a reasonable worker from making or supporting a charge of discrimination; and, (3) there is a nexus between the protected activity and the adverse actions. *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006). There does not appear to be any dispute that McMillan engaged in protected activity when she complained about sexual harassment to DYS on June 15,

---

[1] The plaintiff has previous filed a motion to strike this deposition, along with other evidence and argument that was presented for the first time by the defendant in its Reply brief. (Doc. 77) The plaintiff has not been provided an opportunity to respond to this evidence or argument.

1

2005 or when she filed a charge of discrimination for sex discrimination and retaliation with the EEOC on July 12, 2005. Although DYS omits any reference to it in their brief, we may assume that there is no dispute that McMillan filed an additional EEOC charge of discrimination for retaliation on December 11, 2005. (Doc. 44: PX 20; PX 21). DYS disputes in this supplemental reply brief that McMillan was subjected to adverse employment actions or that there is evidence of any nexus between these actions and her protected activity (Supp. Reply brief at p. 2, ¶ 2). McMillan will address these elements below.

I. <u>Actions which would deter a reasonable employee from making or participating in a charge of discrimination</u>. DYS contends, first, that McMillan did not suffer any "adverse employment actions". The United States Supreme Court significantly modified the standard previously employed in this circuit by eliminating the requirement that a retaliation plaintiff must show that she suffered a tangible adverse employment action to establish her prima facie case. (<u>See</u> *Burlington Northern*,. p. 2405-6) The Court held that a plaintiff need only show that she was subjected to materially adverse actions that would deter a reasonable employee from participating in discrimination complaints. *Id.* p. 2406. In so holding, the Court acknowledged that the scope of protection under Title VII afforded to a retaliation complainant is broader than that of a discrimination complainant. *Id.* p. 2411.

A. <u>Denial of pay and benefits.</u> McMillan has offered substantial evidence that, immediately in the aftermath of making her sex harassment and discrimination claim, her supervisors required her to work a double shift and that she was denied time off from work that was afforded to all other employees. McMillan worked at Paige Hall from

2

midnight to 8:00 a.m. on July 11th – 15th; at the Intensive Treatment Unit (ITU) from 10:00 p.m. to 6:00 a.m. on July 15th and 16th; at Trustee Hall from midnight to 8:00 a.m. on July 17th; at ITU from 10:00 p.m. to 6:00 a.m. on July 18th (Doc. 44: PX 7)  Both of these actions caused material harm to McMillan by forcing her to work without pay and by denying her a benefit of her employment, and are of the kind and quality that would deter her or other employees from making or participating in discrimination complaints.  Each is also in violation of the *Fair Labor Standards Act; 29 U.S.C. §§ 201 et seq.*, and constitute tangible adverse employment actions.  DYS attempts in this supplement to excuse its improper and illegal conduct by claiming it is "trivial" and unintentional; and even seems to attribute responsibility for it to McMillan as a consequence she suffered due to her reporting of Hardy's harassment. (Supp. Reply brief at p. 4, ¶ 2 – p. 9, ¶ 2)

McMillan complained of retaliation due to her transfer in her July 12, 2005 EEOC charge and has consistently maintained that it was unreasonable and adverse to her.  DYS does not deny it, and has not taken any action to correct it.  The jury will, more likely than not, conclude that these actions were not 'trivial" as DYS claims here, and that they would deter a reasonable employee from making complaints.

B.  <u>Retaliatory conduct by supervisors</u>.  McMillan has presented unrefuted evidence above that she was required to work unpaid overtime and denied time off which she was due to receive.  In addition, McMillan has shown that her performance evaluations were lowered by her supervisor in the wake of her sex discrimination and retaliation complaints.  She received an "Exceeds Standards" rating on her 2004 and 2005 evaluations (score = 27) prior to her complaints; in 2006, following her internal and

EEOC complaints, she was awarded a significantly lower rating of "Meets Standards"[2] (score = 25) by her supervisor, S. L., and she was marked as "unsatisfactory" for attendance, punctuality, and cooperation with coworkers.[3] The defendant attempts to justify this rating with a claim that McMillan did not attend required training during the year. In December 2005, McMillan's supervisor placed a letter of warning in her file which accused her of not attending mandatory training. (Doc. 44: PX 22) McMillan disputes this contention and has shown that the training this reprimand references and which McMillan was supposed to have failed to attend occurred on November 29, 2005, a date on which McMillan was not even scheduled to work. (Doc. 44: PX 1: ¶ 15)

Even though her evaluation score was returned to the "Exceeds Standards" range in 2007 (score = 28) by S.L., she had a notation placed on her evaluation that she was "late three times". (Doc. 44: PX 13) As shown in the table and supporting ITU attendance records contained in plaintiff's exhibit 12 to her summary judgment response, most of her coworkers[4] were late more than three times during this time period, but none were disciplined by S. L. or had this notation placed on their evaluation by him.

C. <u>Heightened Scrutiny and Surveillance</u>. McMillan was subjected to heightened scrutiny and surveillance by her supervisor, S.L., following her discrimination and retaliation complaints. In addition to the less favorable evaluation noted above, twenty-three notes and/or warnings were placed in McMillan's personnel file by S.L. and/or her coworkers between November 29, 2005 and September 15, 2007. Eight of these were

---

[2] The lowered rating meant that McMillan would receive only a one-step raise rather than the two-step raise she had been consistently earning with her "Exceeds Standards" ratings.
[3] The defendant disputes these negative ratings by S.L. for the 2005-2006 evaluation year. (brief at p. 13, f.n. 6, but see PX 13, p. 5) This evaluation form, signed by "S.L." was placed in McMillan's personnel file.
[4] The defendant wrongly states in brief (at p. 10, ¶ 3) that McMillan does not show that the other employees included in her Exhibit 12 were "similarly situated". The exhibit shows only employees at the ITU dorm where she worked, and who were under the same supervisor (S.L.) as she was during the relevant time period.

4

written between January 10 and February 16 of 2006, shortly following the filing of McMillan's second retaliation charge with the EEOC. (Doc. 44: PX 9)  The defendant attempts to dismiss these write-ups in its supplemental brief by claiming that they were "routine documentation". (Supp. Reply brief at p. 16, ¶¶ 2, 3)  Significantly, DYS does not point the plaintiff or the Court to any other employee in the ITU unit who has <u>any</u> documentation of work incidents in their personnel file during this time period, and certainly not any that remotely approach the degree of surveillance imposed on McMillan.  Padding an employee's personnel file with negative reports is substantial evidence from which the jury may reasonably conclude that DYS was retaliating against McMillan in the aftermath of her Title VII complaints. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 921 (11th Cir.1994); *Kotas v. Waterman Broadcasting*, 927 F.Supp. 1547 (M.D.Fla. 1996).

D. *Isolation and Denial of Training*.  McMillan informed DYS and EEOC in her initial charge that she was being subjected to the denial of necessary training and that she was being threatened with unwarranted discipline following her transfer in June 2005. (Doc. 44: PX 3)  She has also proffered testimony that she was isolated by fellow employees immediately following her transfer to her new assignment and that she was refused assistance in learning her new duties by her supervisors and fellow employees. This occurred in the context of efforts by the perpetrator to enlist the support of his co-employees in retaliating against McMillan for her complaint against him. (Doc. 44: PX 1, ¶ 13)  DYS assigned its investigator to review these complaints in February 2006 and he concluded, after the perpetrators denied the accusations, that he was "unable to confirm" them. (Doc. 44: PX 21 p. 3, ¶ 2)  The investigator did, however, recognize the

5

undue workplace stress suffered by McMillan and suggested to her that she transfer to another dorm to work. (Doc. 44: PX 1, ¶ 14, 15)

These are actions which, taken in context with other evidence in this case, will be construed by the jury as evidence of an ongoing pattern of retaliatory conduct against McMillan following her reports of discrimination. *Moore v KUKA Welding*, 171 F.3d 1073 (6th Cir. 1999) (After filing with EEOC, supervisors began to avoid plaintiff, would not talk to him, and intentionally isolated him); *Abramson v. Wm.Paterson College*, 260 F.3d 265, 288-89 (3rd Cir. 2001) (ongoing antagonism and change in demeanor of decision-maker provide sufficient proof of causal connection). See also: *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 791–93 (6th Cir. 2000) (supervisory harassment); *Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 446 (2nd Cir. 1999) (co-worker harassment); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998); *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996) (co-worker harassment).

    II.    <u>Evidence from which a causal relationship with McMillan's complaints may be inferred.</u>   DYS relies primarily upon an argument that McMillan's retaliation claim fails because she can not show any temporal relationship between the adverse actions she complains of to the discrimination complaints she lodged. (Supp. Reply brief at p. 2, ¶ 4; p. 11, ¶ 1; p. 16, ¶ 2; p. 17, ¶ 2). A brief chronology of events[5] belies the argument:

| | |
|---|---|
| June 15, 2005 | discrimination complaint to DYS supervisors. |
| June 15-21, 2005 | assigned to work a double shift and denied days off. |
| June 21, 2005 | memos by coworkers in support of Hardy (Doc. 44: PX 19) |
| July 12, 2005 | first EEOC charge with retaliation complaint included. |
| Nov. 29, 2005 | warning for missing training though not informed of it. |

---

[5] Notation to references in the record are omitted for events discussed previously.

6

| | |
|---|---|
| Dec. 11, 2005 | second EEOC charge referencing additional retaliation beginning in September 2005. |
| Feb. 13, 2006 | Evaluation decreased; S.L. marks 3 areas "unsatisfactory". on evaluation form and places it in McMillan's folder. |
| Jan./Feb. 2006 | eight memos placed in McMillan's folder. |
| March-April 2006 | written up for tardies, note place on Feb. 2007 evaluation |
| Jan. 3, 2006 | Complaint filed in U. S. District Court. (Record) |
| May '06-Sept. '07 | additional memos placed in McMillan's folder. |

This chronology demonstrates the fallacy of the defendant's attempts to disaggregate these events, and claim, for instance, that the "tardy" notation on the February 2007 evaluation is too remote in time to be evidence of retaliation for events that occurred in 2005. There has been a continual and consistent pattern of adverse actions, most but not all attributable to supervisor S.L., taken against McMillan that the jury will find to be substantial evidence that a reasonable employee would be deterred from making or participating in Title VII complaints. The defendant's argument on lack of any evidence supporting a temporal connection between and among these events is erroneous, as are the claims of any lack of evidence to infer "intent". These are disputed matters of fact for the jury to decide in this case.

CONCLUSION

The Plaintiff has shown by reference to evidence in the record that (1) she suffered materially adverse actions that would deter a reasonable employee from participating in discrimination complaints after complaining about discrimination by Michael Hardy, and (2) there is substantial material evidence from which the jury will find a causal connection exists between her protected activity and the adverse actions perpetrated against her after she lodged her Title VII complaints. The defendant's motion for summary judgment is due to be denied.

Respectfully submitted this 24th day of March 2008.

7

        /S/ **JIMMY JACOBS**
        JIMMY JACOBS (JAC051)
        Attorney for Plaintiff
        4137 Carmichael Rd, Ste 100
        Montgomery, Alabama 36106
        (334) 215-1788

CERTIFICATE OF SERVICE

  I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon counsel of record following this the 24th of March, 2008.

        /s/**Jimmy Jacobs**
        JIMMY JACOBS (JAC051)
        Attorney for Plaintiff

COUNSEL OF RECORD:

T. Dudley Perry, Jr.
Sancha E. Teele
Deputy Attorney General
Post Office Box 66
Mt. Meigs, AL 36057

James Eldon Wilson, Esquire
Deputy Attorney General
4265 Lomac Street
Montgomery, AL 36106

8