IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERA A. McMILLIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: 2:07-cv-001-WKW |
| | ) |
| ALABAMA DEPARTMENT OF | ) |
| YOUTH SERVICES, et al., | ) |
| | ) |
| Defendants | ) |

**ORDER ON PRETRIAL HEARING**

A pretrial hearing was held in this case on June 20, 2008, wherein the following proceedings were held and actions taken:

1) **PARTIES AND TRIAL COUNSEL:**

   Plaintiff:  Tera A. McMillian

   Counsel:   Jimmy Jacobs, Esq.

   Defendant: Michael J. Hardy

   Counsel: James Eldon Wilson, Esq.

   Defendant: Alabama Department of Youth Services

   Counsel:  Dudley Perry, Esq.; Sancha E. Teele, Esq.

   COUNSEL APPEARING AT PRETRIAL HEARING:

   For the Plaintiff:  Jimmy Jacobs, Esq.

   For the Defendants: James Eldon Wilson, Esq.; Dudley Perry, Esq.

2) **JURISDICTION AND VENUE:**

This court has subject matter jurisdiction purusant to The Civil Rights Acts of 1867 and 1991, as amended; 42 U.S.C. §§ 1981(a), 1983, 1988, and 2000e, *et seq*., as well as Alabama state law pursuant to 28 U.S.C. § 1367. All acts complained of in this action occurred in the Middle District of Alabama.

3) **PLEADINGS**: The following pleadings and amendments were allowed:

    a) Complaint

    b) Answer

    c) Amended Complaint

    d) Amended Answer

4) **CONTENTIONS OF THE PARTIES:**

a) **Plaintiff's Contentions.**

Tera McMillian, the plaintiff in this case, began employment as a Youth Services Aide with the Alabama Department of Youth Services (DYS) on October 21, 2002. Defendant Michael J. Hardy was Ms. McMillian's supervisor at the Department of Youth Services and Ms. McMillian contends that, beginning in 2003, he exploited his position for more than two years to subject her to a variety of unwelcome and offensive acts of sexual harassment and discrimination. Ms. McMillian contends that, among these acts, Hardy grasped her breasts while she was sitting at a desk performing her duties as a Youth Services Aide. She also contends that he asked her to perform oral sex on him and requested that she allow him to perform oral sex on her. She contends that he engaged in a number of other inappropriate and unwelcome acts of sexual harassment over a period

of approximately two years, including inquiries into her sexual preferences and availability; asking her to meet him at motels; and, asking her to be his "side woman".

Ms. McMillian contends that she consistently refused Mr. Hardy's advances and made it clear to him that she was not interested in a relationship with him. She contends that she, as a single mother, was very fearful of losing her job and insurance benefits and believed that Mr. Hardy would eventually leave her alone if she just told him "no". Ms. McMillian contends that Hardy continued his inappropriate conduct and utilized his position of authority to impress upon her that he was a powerful person on the Mount Meigs campus, and that it would do her no good to complain against him. McMillian contends that she continued to endure Hardy's harassment until June of 2005 when she was compelled to report it in order to get a transfer away from his supervision and harassment.

Ms. McMillian contends that after she reported Hardy, he retaliated against her by filing a grievance in which he made false allegations of misconduct against her, and that he also solicited letters of support from McMillian's co-workers. She contends that DYS did not inform her of these actions by Mr. Hardy, even though she reported to the personnel manager that her supervisor and co-employees were subjecting her to hostility and isolation in the new work site to which she had been assigned.

Ms. McMillian contends that DYS's personnel manager conducted an investigation of her charges of sex harassment; found them to be valid; and recommended the termination of Hardy's employment. She contends that this investigation also found that Hardy had violated DYS policy in his effort to retaliate against McMillian after her

3

complaint was lodged. She contends that the DYS Director determined that Hardy had violated Rules of the State Personnel Board governing "disruptive conduct, use of abusive or threatening language, serious violation of any other department rule" and "DYS Policy…Prohibition of Sexual Harassment." and terminated Hardy's employment effective January 6, 2006.

Ms. McMillian contends that Mr. Hardy appealed his dismissal to the State Personnel Board in January of 2006, and that the state upheld Mr. Hardy's termination following a two day hearing during which Ms. McMillian and others testified about Mr. Hardy's sexual harassment of her. She contends that Mr. Hardy did not appeal this decision.

Ms. McMillian contends that she was transferred to work at another dorm at the Mount Meigs facility, as requested, after she reported Hardy and was required to work eight or more days consecutively with no time off due to this move. She contends that she was even required to work two shifts on the day that she was initially reassigned by DYS, and that she was not paid or compensated for this extra work. Since arriving at the new dorm, she contends that she has been ostracized by personnel who refused to help her learn the new procedures, and has been singled out by her supervisor for heightened scrutiny and surveillance by co-employees. Ms. McMillian contends that DYS failed to remedy her complaints of retaliation and that she filed an additional charge of retaliation with the EEOC in December of 2005 because of this conduct. Ms. McMillian contends that she was subjected to additional retaliation following the filing of this complaint. Specifically, she contends that her dorm manager or his staff wrote *27* memos concerning

her between November 2005 and September 2007 and that no other employee was written up similarly to her. In January and February 2006 alone, immediately following McMillian's filing of her second retaliation charge, nine memos were written on her. Ms. McMillian contends that between April 2006 and February 2007, her supervisor wrote six memos about her being tardy to work. On February 12, 2007, he placed a disciplinary warning in her file for being late three times. Ms. McMillian contends that numerous other employees were late for work or left work early more than three times in the March-April 2006 time period alone, but were not disciplined in a similar fashion. Ms. McMillian contends that she received a lowered performance appraisal score following the filing of her EEOC charges in July and December of 2005 which caused her to receive a lower annual pay increase than she had previously received. In November 2006, McMillian's unit manager wrote her up for not attending a training session which she contends that she was never notified about. Ms. McMillian contends that no other employee at her work site was subjected to such a degree of scrutiny and discipline, and that these were acts in retaliation against her for making her EEOC complaints for which DYS is responsible for damages under the law.

Ms. McMillian contends that she believed that reporting Hardy's harassment would result in her losing her job or in some other form of retaliation. She contends that she formed this belief from Hardy's statements about his power and influence with the "clique" on the campus; his story of how he had stifled a prior complaint of sex discrimination; and, from the numerous unaddressed instances of improper sexual relationships between staff members, and between staff members and students on the Mt.

5

Meigs campus of DYS. She contends that the Department of Youth Services failed to properly enforce its stated policies against sexual harassment and misconduct and that this failure to properly train and supervise its staff allowed the sexually offensive environment she had to endure to exist in the workplace at the Mount Meigs. She contends that Mr. Hardy did subject her to sexual harassment and discrimination as a condition of her employment, and that he undertook retaliation against her after she reported him, causing her to suffer great emotional and mental distress for which she is due to be compensated by him. She also contends that Mr. Hardy committed these illegal acts intentionally with disregard for her rights or her personal wellbeing, and that she is due an award of punitive damages against him.

Ms. McMillian contends that she has suffered adverse employment consequences and endured mental and emotional distress as a result of this reckless indifference to her federally protected rights, and that the defendants are liable for injunctive and compensatory damages. She also contends that this discriminatory treatment and harassment of her on the basis of sex was so severe and pervasive as to create an abusive work environment and unreasonably interfered with her opportunity and ability to perform her job free from sexual harassment.

Ms. McMillian contends that Mr. Hardy is liable to her under Alabama law for his offensive touching of her and the apprehension of physical harm that he imposed upon her by his sexually harassing conduct. She also contends that Mr. Hardy wrongfully and outrageously intruded into her right to the security and safety of her privacy by his wrongful conduct so as to cause her to suffer emotional distress, shame or humiliation; and,

that he is liable to her under the laws of Alabama for compensatory and punitive damages for this willful and wanton conduct.

    **(b) The defendants(s)**

    **Defendant Michael Hardy** contends that the allegations contained in the Complaint, as amended, are untrue and without merit. He denies that he has ever sexually harassed the Plaintiff and, further, contends that he has never discriminated against her in any capacity or respect. He further contends that he has not denied Plaintiff equal protection under the Constitution of the United States.

    Defendant Michael Hardy contends that he has not retaliated against the Plaintiff.

    Defendant Michael Hardy contends that he did not invade Plaintiff's privacy and did not cause her to suffer humiliation, physical pain and anguish, mental pain and anguish, or any other type of injury or damages. Further, Defendant Hardy contends he did not negligently or intentionally inflict any injury on Plaintiff which would entitle her to compensatory or punitive damages.

    Defendant Michael Hardy contends he did not commit assault and battery on Plaintiff's person and did not injure Plaintiff in any respect. He did not commit any injury to Plaintiff which would entitle her to either compensatory or punitive damages.

    Defendant Hardy further contends that during the discovery phase of this case, Plaintiff has provided no evidence of any physical or mental injury and, when questioned, either refused or was unable to state any damages.

    Defendant Hardy denies each and every allegation in the Amended Complaint about him and demands strict proof thereof.

**Defendant Alabama Department of Youth Services** contends:

1. The Plaintiff failed to exhaust her administrative remedies with the Equal Employment Opportunity Commission.
2. DYS is not liable under the *Ellerth/Faragher* defense. When the Plaintiff reported that she had been sexually harassed by Michael J. Hardy she also requested to be transferred to the Intensive Treatment Unit ("ITU"). The Department took immediate and effective remedial action in accordance with the Plaintiff's stated preference by moving her to the ITU the very same day she complained. The Plaintiff unreasonably failed to take advantage of the Department's procedures to protect her self from the alleged sexual harassment.
3. The Plaintiff suffered no tangible or adverse employment action.
4. The Plaintiff was not subjected to conduct sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. The Plaintiff has insufficient evidence to establish a prima facie case of sexually charged hostile working environment. Her claims establish only discrete acts.
5. The Plaintiff's claims for discrete acts are barred by the statute of limitations.
6. DYS took prompt and effective remedial action upon learning of the Plaintiff's allegations.
7. DYS has not unlawfully discriminated against the plaintiff.
8. The plaintiff has no evidence of discriminatory purpose and therefore fails to state a 42 U.S.C. § 1983 claim under the Fourteenth Amendment.
9. The Plaintiff cannot recover under 42 U.S.C. § 1983 on a theory of respondeat superior liability.
10. To the extent the plaintiff purports to state a cause of action against the Department under 42 USC § 1983 based on Michael Hardy's conduct as a "supervisory defendant", the Department is entitled to sovereign immunity.
11. To the extent the plaintiff purports to state a cause of action against the Department under 42 USC § 1983 based on Hardy's supervisory capacity, the defendant is entitled to Eleventh Amendment immunity.
12. The Department is protected by Eleventh Amendment immunity and State immunity under Article I § 14 of the Constitution of Alabama.
13. The Department is an agency of the State of Alabama and is immune from suit pursuant to the Eleventh Amendment.
14. The plaintiff's claims against Hardy under 42 USC §1983 and the plaintiff's claim against DYS under Title VII merge. The plaintiff cannot recover from both.
15. The Department asserts that the claims against the Department for "retaliation" are frivolous. The Plaintiff has insufficient facts to establish a prima facie case of retaliation against DYS because (1) none of the alleged retaliatory acts are actionable adverse employment actions, (2) there is no evidence that any protected activity contributed or is causally connected to any of the actions alleged to be actionable adverse employment actions, (3) any actions taken by DYS alleged to have been retaliatory were the correct actions to take regardless of whether the

8

     Plaintiff had engaged in any protected activity, and (4) DYS is not simply vicariously liable for the actions of subordinate employees and can only be liable for actions attributable to DYS.

16. DYS is not judicially estopped from arguing that the prima facie elements of Title VII have not been met. DYS has not taken a clearly inconsistent position with an earlier position; DYS persuaded the administrative law judge that Michael Hardy's termination should be upheld; DYS did not persuade the judge that the plaintiff has established a Title VII claim of sexual harassment or retaliation; therefore there is no unfair advantage on the plaintiff.
17. The Plaintiff suffered no damages.
18. The Department is entitled to attorneys' fees and costs.


19. Title VII does not provide for punitive damages against governmental entities.
20. The award for punitive damages against the Department would violate the United States and Alabama Constitutions.
21. DYS cannot be found liable for punitive damages.

    **5)**       **STIPULATIONS BY AND BETWEEN PARTIES:**

    a)       The Defendant Alabama Department of Youth Services was, and is, an employer subject to the requirements of the Civil Rights Act of 1991, as amended.

    b)       The Plaintiff has been an employee of the Defendant Alabama Department of Youth Services since October of 2002.

    c)       The Plaintiff is a member of a group, female, protected by the provisions of the Civil Rights Act of 1991, as amended.

    d)       The Defendant Michael J. Hardy was employed by Defendant Alabama Department of Youth Services as the supervisor of the Plaintiff.

    e)       The Plaintiff charged the Defendant Michael J. Hardy with sexual harassment in June of 2005.

    f)       The Department of Youth Services has a policy in place prohibiting sexual harassment.

g) The Department of Youth Services has provided training for its staff on its policies regarding sexual harassment.

h) The Alabama Department of Youth Services transferred the Plaintiff to work in a different dormitory which was not supervised by the Defendant Michael J. Hardy on the date that she made her complaint of sexual harassment.

i) The Defendant Alabama Department of Youth Services investigated the Plaintiff's charge of sexual harassment and terminated the employment of Defendant Michael J. Hardy effective January 6, 2006, as a result of this investigation.

j) The Defendant Michael J. Hardy timely appealed his termination of employment to the Alabama State Personnel Board.

k) The Plaintiff timely brought this suit following receipt of a Notice of Right to Sue from the Equal Employment Opportunity Commission.

l) The jurisdiction of this case properly lies in the United States District Court for the Middle District of Alabama, Northern Division.

It is ORDERED that:

1. The jury selection and trial of this case, which is to last 5 days, is set for July 28, 2008, at 10:00 a.m., in Courtroom 2-E of the Frank M. Johnson, Jr., United States Courthouse Complex, One Church Street, Montgomery, Alabama.

2. A trial docket will be mailed to counsel for each party approximately ten days prior to the start of the trial term.

3.      The parties shall file any requested voir dire questions, motions in limine fully briefed, and proposed jury instructions and proposed verdict forms with legal citations thereon, on or before July 14, 2008.

4.      The parties are not required to file trial briefs, but if they choose to do so, the briefs shall be filed on or before July 21, 2008.

5.      The parties shall jointly prepare and submit to chambers on or before July 21, 2008, two copies of a three-ringed binder of pre-marked exhibits. The binder shall contain joint exhibits (i.e., those exhibits that are relevant, not subject to objections, and certain to be introduced at trial); plaintiff's exhibits; and defendant's exhibits. On the same date, the parties shall jointly prepare and submit to chambers three copies of the exhibit list, which shall delineate all objections and responses to objections. The parties shall direct questions about this procedure to the law clerk assigned to the case.

6.      The parties shall review and comply with the Middle District of Alabama's Order on the E-Government Act.

7.      All deadlines not otherwise affected by this order will remain as set forth in the Uniform Scheduling Order (Doc. # 15) entered by the Court on April 4, 2007

9.      The parties have indicated that there are no other disputes at this time. All understandings, agreements, deadlines, and stipulations contained in this Order shall be binding on all parties unless modified by the Court.

DONE this 8th day of July, 2008.

                                        /s/  W. Keith Watkins
                                        UNITED STATES DISTRICT JUDGE